UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO.  H-18-710-S |
| | § | |
| CLARENCE ROLAND, III | § | |
| a.k.a. Joshua Stein | § | |

UNITED STATES' RESPONSE TO OMNIBUS MOTION TO DISMISS

TO THE HONORABLE LEE H. ROSENTHAL:

COMES NOW the United States of America, by and through Jennifer B. Lowery, the Acting United States Attorney for the Southern District of Texas, and the undersigned Assistant United States Attorneys in opposition to defendant's Omnibus Motion to Dismiss.

## I.    Procedural History

Defendant Roland was charged by indictment with conspiracy to commit bank and wire fraud on December 12, 2018. (Dkt.1).  On April 2, 2019, the indictment was superseded adding charges for wire fraud (counts 2-4) and monetary transactions in criminally derived property (counts 5-10).  (Dkt.5). A writ of habeas corpus ad prosequendum was issued for Roland, who was a prisoner of the State of California serving an eleven (11) year prison sentence.  Roland's initial appearance before United States Magistrate Judge Palermo was on April 29, 2019.  On April 30, 2019, Roland moved to continue his detention hearing. (Dkt.14). On May 14, 2019, following a detention hearing, Roland was ordered detained pretrial.  (Dkt.18).

On May 23, 2019, Roland moved for additional time to file pretrial motion, which was granted on June 4, 2019, following a sealed hearing.  (Dkt.24-27).  On July 24, 2019, Roland moved to continue the trial. (Dkt.28).  Roland's motion was granted, and trial was scheduled for November 18, 2019. (Dkt.30).  On October 16, 2019, Roland moved to have the case declared

complex and also filed a motion to continue the trial. (Dkt.35&36).   On October 21, 2019, the motions were granted, and the trial was rescheduled to April 1, 2020). (Dkt.37).  On February 12, 2020, Roland, pro se, made a written request of the court for a list of documents which was responded to by the Office of the Clerk of the Southern District of Texas.  (Dkt.38&39). March 17, 2020, another sealed hearing was held. (Dkt.47).

A joint motion for continuance of the trial was filed March 16, 2020, citing the pandemic as a basis to continue the trial. (Dkt.51). An order continuing the trial until June 15, 2020, was issued on March 18, 2020. (Dkt.48). Due to the pandemic additional motions to continue were filed and granted. (Dkt. 51, 52, 54&55).

On April 27, 2021, another sealed hearing was held before this Court. (Dkt.61).  On April 30, 2021, Roland moved for additional time to file his motions.  (Dkt.58). On May 3, 2021, Roland moved to revoke the pretrial detention order.  (Dkt.59).  On May 10, 2021, a hearing was held and Roland was released from custody on conditions of release. (Dkt.65).  The court ordered the trial and motions deadlines to be amended, and the trial was reset until September 27, 2021.  On June 8, 2021, Roland filed this pro se omnibus motion to dismiss the indictment.   (Dkt.70).

II.      Earlier Criminal Cases

A.  State of California

In 2015, Roland was first indicted in San Diego County, California, and charged with various violations of California State laws, in case number SCD25517. (Exhibit A, *unpublished opinion of the Court of Appeal, Fourth Appellate District Division One of the State of California* filed 9/11/2020, p.3).   The state indictment was later superseded in 2017. (Exhibit A, p.3). Although Roland claims the San Diego indictment charged him with "misapplication of Truth in Lending Act" laws, in addition to California laws, the San Diego indictment only charged Roland

with violating California Penal Code Sections 115(a) and 487(a).  (Exhibit B, *33 count San Diego indictment in case SCD255517*). Roland was tried on the superseding indictment and found guilty by a jury of four counts of grand theft of personal property and 14 counts of filing a false instrument. The remainder of the counts were dismissed by the state court due to statute of limitations issues. (Exhibit A, pp.2&27). Roland testified on his own behalf at trial, making many of the same claims he asserts in his Omnibus Motion to Dismiss the indictment. At the sentencing hearing, prior to imposing an 11-year state prison sentence, the state trial court stated:

> [Roland's] claim that he thought what he was doing was completely legal under the various statutes and everything, I think is nonsense. For anybody to claim that they thought you could send a letter to a mortgage holder and in 20 days have the property now free and clear because they didn't respond to a letter is nonsense. And the Defendant is clearly an intelligent man. So for him to be asserting that that's what he honestly thought, I think is . . . nonsense. I don't believe for a second that he really thought that . . . this property was free and clear. And I think that's evidenced by the fact that he utilized fraudulent signatures of people, signing in somebody else's name, signing on behalf of an entity that the Defendant knew full well he was not an authorized representative of them. Having notarizations that were fraudulent, clearly fraudulent, I think evidences the knowledge and intent of the Defendant."

(Exhibit A, p.28).

Roland appealed his conviction and the sentence enhancement imposed.  Roland's complaints on appeal were rejected by the California Appellate court.  The case was remanded at the request of the California Attorney General for resentencing as it relates to a mandatory fine that was not imposed.  (Exhibit A, p.2).

Subsequent to his conviction and sentencing in San Diego County, Roland was arrested and brought to Houston on a writ of habeas corpus ad prosequendum to stand trial in this cause.

3

B. Eastern District of Texas (EDTX 4:17-cr-177)

On September 11, 2017, a criminal complaint as to Arlando Jacobs and Clarence Roland was filed in the Sherman Division of the EDTX. (Dkt.1).  At the time of the filing of the complaint, Roland was in pretrial detention on the San Diego charges. Roland was brought to Sherman on a writ of habeas corpus ad prosequendum issued on October 18, 2017, after Roland had been indicted on the EDTX charges. (Dkt.14&22).  Roland was ordered detained pending trial. (Dkt.36). The EDTX indictment was superseded on February 14, 2018. (Exhibit C). Roland was charged in count one with conspiracy to commit wire fraud and in count six with aggravated identity theft.

An agreed motion to declare the case complex was filed on April 13, 2018 as well as an Agreed Motion for a Special Setting. (Dkt.49-51). On April 19, 2018, the Court entered an Order Finding the Case complex and granted the Motion for a Special Jury Trial Setting. (Dkt.52 & 53). On April 19, 2018, a Pretrial Order was entered scheduling a Pretrial Conference and Jury Trial for September 17, 2018.  (Dkt.54).  A month later on May 21, 2018, Roland filed an Assertion of Right to Speedy Trial in which he indicated his agreement with the September 2018 trial date but asked that it be set as a priority trial with no further resets. (Dkt.62).

Roland was interviewed by federal agents, in the presence of his attorney on May 29, 2018, under a proffer agreement.  On May 30, 2018, Roland signed a plea agreement with the EDTX agreeing to plead guilty to Count one of the superseding indictment.  (Exhibit D).  On July 17, 2018, at the request of Roland, a change of plea hearing was scheduled before the district court on July 24, 2018. (Dkt.69). The day prior to the scheduled plea, Roland moved for a Change of Venue. (Dkt.70).

On August 6, 2018, the United States Attorney's Office for the EDTX moved to dismiss the indictment as to Roland.  (Dkt.71).  The court granted the motion to dismiss without prejudice

on August 7, 2018. (Dkt.72).  Roland was subsequently returned to California where he stood trial

in San Diego on the pending state criminal indictment.

On February 24, 2020, while in custody in Houston pending trial in this cause, Roland filed

a Motion to Vacate under 28 U.S.C. 2255 in the EDTX (Dkt.109) which was dismissed on April

30, 2021. (Dkt.125).

III.    Legal Argument

Roland has raised six claims in his motion to dismiss the indictment. Federal Rule of

Criminal Procedure 12(b) permits a defendant to raise by pretrial motion "any defense, objection,

or request that the court can determine without a trial on the merits," including "a defect in the

indictment."  Fed. R. Crim. P. 12(b)(3)(B).  In the Fifth Circuit, "[t]he propriety of granting a

motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether

the infirmity in the prosecution is essentially one of law or involves determinations of fact. . . .  If

a question of law is involved, then consideration of the motion is generally proper." *United States*

*v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (omissions in original) (internal quotation marks

omitted).  However, "[a] defendant may not properly challenge an indictment, sufficient on its

face, on the ground that the allegations are not supported by adequate evidence, for an indictment

returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for

trial of the charge on the merits." *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975); *see*

*also Costello v. United States*, 350 U.S. 359, 363 (1956).   Each claim raised by Roland in his

Omnibus Motion to Dismiss the Indictment is without merit and his motion should be denied.

A.  Court's Jurisdiction

Roland claims this court lacks jurisdiction to preside over this criminal case because he

was "engaged in a civil administrative process" when he committed the acts outlined in the

5

indictment.  Roland's argument ignores the fact he has not been charged with violating a "civil administrative process" or with violating The Truth in Lending Act (TILA § 112).  Rather, the indictment alleges Roland planned and carried out a scheme to defraud which relied upon false pretenses and representations to obtain money, in violation of several federal criminal statutes found in Title 18, United States Code.  *See Superseding Indictment* (Dkt.5).

Roland seeks a pretrial ruling that his "proprietary" process (Dkt.7 p.2), which involved making false statements and creating false pretenses, was authorized under civil law. He also wants a judicial finding that he cannot be held accountable criminally for any of his conduct in executing that process.  Roland's motion seeks a legal ruling on questions that should be addressed by a fact finder at trial.

The Truth in Lending Act (TILA) provides rules for certain home-secured credit and provides a cause of action against creditors that fail to make required disclosures. 15 U.S.C. §§ 1601 *et seq.*; 12 C.F.R. §226 ("Regulation Z").  Under the regulations, consumers have the right to cancel certain credit transactions that involve a lien on the consumer's principle dwelling if certain conditions are met. 12 C.F.R § 226.1.

Although the centerpiece of Roland's "proprietary 4-Phased Civil Administrative Non-Judicial Quiet Title process" is the right to rescind under TILA  (Exhibit A, p. 20), TILA sets out as exempt from the right to rescind, residential mortgage transactions.[1]  12 C.F.R. §226.23(f)(1). As Roland has repeatedly emphasized, "for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'"   *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030 (1989) (quoting *Caminetti v. United*

---

[1] A residential mortgage transaction "means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling. 15 U.S.C. 1602(x).

*States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194 (1917)).  The question posed by Roland, "whether or not he, acting as an agent for homeowners and also acting as Trustee on their behalf, had the right to assist homeowners in unilaterally rescinding and unwinding their mortgages after proper notification was given to the lenders/creditors/loan servicers without filing an action in court" is answered in the plain text of TILA.[2]  (Dkt.70 p.8).  *See also Merritt v. Countrywide Financial Corp.*, 759 F.3d 1023, 1029 n.7 (9th Cir. 2014) (TILA does not apply to residential mortgages used to finance the initial acquisition or construction of a dwelling).

Although Roland proclaims that his conduct was "authorized by the Deeds of Trust and TILA and related law" and that his "process was executed lawfully," in 46 pages Roland failed to demonstrate that any of these laws or forms authorize the creation and filing of deed documents which falsely purport that the lender assigned and transferred their interest in the property to a nonexistent entity. (*Superseding Indictment* Dkt.5 p.13 ⁋ 18).  Roland has not identified the law that permitted the deed assignment to be signed by Roland's employee as if she was a representative of the lender, or that allowed the false notarization of the alleged signature of the lender. (Dkt.5 p.4 ⁋ 13 & p.5 ⁋ 14).  Roland has not specifically identified the portion of the law which authorized him to create and file a deed document which purported to transfer the ownership of the residence from the nonexistent entity to Annanias & Sapphira Investors Group, LLC., a company incorporated in Roland's alias, Joshua Stein. (Dkt.5 p.6 ⁋ 15). Roland's motion does not identify any law permitting the creation and filing of a Deed of Trust which falsely claimed Annanias & Sapphira Investors Group, LLC obtained a mortgage loan from another entirely fictional lender entity, InterBank Loan Servicing Corp. (Dkt.5 p.7 ⁋ 17).

---

[2]  Although Roland cites *Jesinoski v. Countrywide Home Loans, Inc.,* 574 U.S. 259, 135 S.Ct. 790 (2015) as his authority for unilateral recission, *Jesinoski*  only held that "a borrower need not file a TILA lawsuit within three years, and rather, TILA's three-year requirement refers to the period within which the borrower must notify the lender of her intent to rescind." *Macklin v. Deutsch Bank National Trust Co.*, 2015 WL 9274103.

Despite Roland's efforts to portray his conduct as a duly authorized administrative process which the government has mistaken for a fraud scheme, his argument that the court must dismiss the indictment for lack of jurisdiction fails. Jurisdiction arises from the cause of action. In this case the cause of action is a criminal indictment returned by a federal grand jury.

This Court's jurisdiction is found in the U.S. Constitution. Article III of the Constitution extends the federal judicial power to all cases in law and equity "arising under" the laws, Constitution, and treaties of the United States.  In the Judiciary Act of 1789, Congress granted the federal trial court's jurisdiction over all crimes and offenses that are cognizable under the authority of the United States.

A court's jurisdiction is predicated upon a specific case or controversy. The court has jurisdiction to preside over this case and this defendant, since Roland is charged with violations of federal criminal statutes. *See* U.S. Const. art. 3, § 2, cl.1.[3]

B.  <u>Selective and Vindictive Prosecution</u>

The prosecution has broad discretion to initiate and conduct criminal prosecutions due to the separation of powers doctrine. *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 1486 (1996).  "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668 (1978).

Roland alleged that the government is acting with malice and has been vindictive and

---

[3] As part of his jurisdictional argument, Roland claims the government was required to intervene pursuant to Rule 24, Fed. R. Civ. P. Although Rule 24 is a federal district court rule of procedure, Roland does not specify what court proceeding the government failed to intervene in. Importantly, Roland did not initiate court proceedings to take the lienholder's interest in the residential properties. His argument further overlooks the fact he used aliases, nonexistent entities and business entities he had others create so that his role and identity in this "process" would be obscured. When the lenders and lienholders did initiate lawsuits after discovering their secured interest had been sold out from under them, Roland did not voluntarily appear in court and take part in the court proceedings.

selective in its prosecution of Roland. "A selective-prosecution claim is not a defense to the merits of the criminal charge itself, but an independent assertion that the prosecution brought the charges for reasons forbidden by the Constitution." *Armstrong* 514 U.S. at 464, 116 S.Ct. at 1486. The exercise of some selectivity in enforcement is not itself a constitutional violation so long as the selection was not deliberately based upon an unjustifiable standard. *Oyler v. Boyles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506 (1962). Roland must demonstrate that the prosecutorial policy or decision "had a discriminatory effect and was motivated by a discriminatory purpose." *Armstrong* 514 U.S. at 465, 116 S.Ct. at 1487 (citing *Oyler,* 368 U.S. at 456, 82 S.Ct., at 506). Roland has made no such showing to sustain a claim of selective prosecution.

Roland begins his argument stating the government in prosecuting him is being malicious, vindictive and selective because we do not agree with or adopt his defensive theory that his conduct was civil and not criminal. He also states, without any offer of proof, that he "was singled out for prosecution in a jurisdiction and venue, that clearly has a different form of Judicial Foreclosure action rather than the Non-Judicial Foreclosure action in the venues that Mr. Roland actually operated in." (Dkt.70 p.26).  Roland's argument is without merit. The criminal charges are not based upon foreclosure rules or practices and those rules and practices are irrelevant to this case. There was not technical or tactical advantage in indicting this case in the Southern District of Texas on the basis of foreclosure rules.  "Any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." Title 18, U.S.C. § 3237(a).

Roland has also raised a claim of prosecutorial vindictiveness. To establish prosecutorial vindictiveness, Roland must show either (1) actual vindictiveness or (2) show sufficient facts to

create a presumption of vindictiveness. *Jordan v. Epps*, 756 F.3d 395, 406 (5th Cir. 2014), (citing *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008)). Roland made no showing of either actual vindictiveness or facts which would create a presumption of vindictiveness.

Roland lists his grievances for events he claims happened during the three prosecutions. (Dkt.70 pp.27&28).   First, he accuses the investigative agents of mischaracterizing statements he made in the EDTX concerning documents he filed regarding the residential properties. While he now denies admitting to agents that he filed fraudulent documents and is offended by the testimony of FBI Special Agent Hanley as a rebuttal witness in the San Diego trial, there is documentary proof of such an admission. Although he ultimately backed out of a guilty plea, Roland signed both a plea agreement (Exhibit D) and a written factual basis in the EDTX. The factual basis described the use of fraudulent documents in the scheme to defraud.  (Exhibit E).

According to Roland, the government has intimidated witnesses. (Dkt.20  p.28). Interestingly, Roland made a similar allegation about the San Diego County, California, District Attorney's Office during his testimony in San Diego. *See Excerpt from Roland's San Diego trial testimony,* (Exhibit F p.70 ln.15-28; p.71 ln 1&17-27). Prosecutors and law enforcement agents have not engaged in witness intimidation.

Roland accuses the government of impeding his defense by shuttling him around the country and having him detained. (Dkt.20 p.28).  Roland was serving an 11-year prison sentence when he was brought to Houston on a writ of habeas corpus ad prosequendum to stand trial in this case.  Once he came into the custody of the United States Marshal's Service in Houston, he remained in Houston until he was released on bond recently. The only other occasion Roland was moved from one prison to another, was on a writ from the EDTX to stand trial on an indictment

brought in the Sherman Division.  He was returned to the custody of San Diego County, California after the EDTX indictment was dismissed.

There was no concerted effort to ping pong Roland around the country to various prison facilities in order to gain some advantage.  Roland was transferred only upon court order and only as needed.

Roland has not established that this prosecution is vindictive.  His complaints individually and in combination simply do not create a presumption of vindictiveness.

C.  Defect in Indictment

Roland asserts that the indictment is defective because it does not set out his defensive theory.  He claims the indictment should set out that he was simply engaged in a civil process following certain procedures to achieve his desired outcome. (*Motion to Dismiss* Dkt.70 p. 23). Roland opines that the indictment should reflect that he was a "duly appointed Trustee" executing documents as any other experienced Trustee would execute documents in similarly situated position."[4]  (Dkt.70 p.19). He also asserts that the indictment is defective for failing to specify or otherwise set out what he characterizes as exculpatory evidence, that is his assertions concerning his intentions in following his proprietary process and his claim that he was doing so under the auspices of TILA, RESPA and other consumer protection regulations.[5]  (Dkt.70 p.23).  Roland is making factual arguments masquerading as legal claims.

Finally, Roland argues that assuming the government's factual allegations are true, his conduct did not violate federal criminal law because he relied upon his understanding of 15 U.S.C.

---

[4]  Roland was not a "duly appointed" Substitute Trustee.  The Appointment of Trustee documents filed in the county property records were a fabrication and relied on a chain of fabricated documents generated under the false pretense the lender/lienholder had knowingly given up or assigned their interest in the property to a nonexistent entity that Roland made up out of whole cloth. This sham was just another step in Roland's "process" of getting his hands on the residential property so he could convert it to cash.

[5] At trial, Roland may testify regarding his intent.

§ 1635 and provisions in the deeds of trust he believed authorized his conduct. (Dkt.70 p.42). Factual disputes cannot be the basis of a dismissal of charges. *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011). It is the function of the fact finder at trial to accept or reject Roland's contentions regarding his intent after hearing all the admissible evidence.

The indictment is not deficient. It is well settled that an indictment is sufficient "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907 (1974); *see United States v. Serna*, 688 F. App'x 241, 242 (2017) (unpublished). An indictment is generally sufficient if it sets out the offense in the words of the statute, as long as it sets forth all the essential elements. *United States v. Resendiz-Ponce*, 549 U.S. 102, 109, 127 S. Ct. 782, 789 (2007). While an indictment "must set forth the offense with sufficient clarity and certainty to apprise the accused of the crime with which he is charged," the "test for sufficiency is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimum constitutional standards." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (internal quotation marks omitted). An indictment conforms to minimum constitutional standards when it "(1) contain[s] the elements of the offense charged and fairly inform[s] a defendant of the charge against which he must defend, and (2), enable[s] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Kay*, 359 F.3d at 742 (internal quotation marks omitted) (alteration marks in original omitted). These requirements are more than satisfied by the detailed superseding indictment in this case.

Since Roland is not charged with violating a civil process, the indictment need not discuss TILA, or Roland's proprietary process. Roland's argument that the indictment is deficient is an

attempt to litigate a factual dispute through a legal motion. The alleged deficiencies in the indictment simply do not exist.   Most importantly, the indictment explicitly provides notice to Roland as to the allegations specific to his criminal conduct.   Roland's concerns are factual disputes to be settled by the jury, not by this Court on a pretrial motion to dismiss the indictment. *See, e.g.*, *Kay*, 359 F.3d at 742.

> D.   Grand Jury Proceedings

Roland next claims the grand jury should have been told the name of his company, "TILA Corp.", which according to Roland would have "suggested" to the grand jury that he was operating under a civil process. (Dkt.70 p.24).  It is notable however, that Roland did not use "TILA Corp" in any of the transactions listed in the indictment. That name did not appear on any of the documents executed, nor were TILA Corp. bank accounts used to receive proceeds from the fraudulent sales of the residential properties.  (*Superseding Indictment*, Dkt.5).

Roland suggests that the grand jury should have been shown copies of "Phased Documents" that "might have been exculpatory."  He also claims the grand jury should have been informed of his "thoughts" or "intents" as they relate to the actions Roland was taking in his proprietary process. (Dkt.70 p.25).

The documents and testimony that Roland argues should have been presented to the grand jury do not exculpate the defendant. The grand jury does not meet to determine guilt or innocence, "but to access whether there is adequate basis for bringing a criminal charge." *United States v. Williams*, 504 U.S. 36, 51, 112 S.Ct. 1735, 1744 (1992); *see  United States v. R. Enterprises, Inc.*, 498 U.S. 292, 298, 111 S.Ct. 722, 726 (1991) (The task of the grand jury is to conduct an ex parte investigation to determine whether or not there is probable cause to prosecute a particular defendant. The rules of an adversary hearing on the merits do not necessarily advance the mission

of the grand jury and therefore do not apply). The Fifth Amendment does not proscribe the kind of evidence upon which a grand jury must act. *Costello v. United States*, 350 U.S. 359, 362, 76 S.Ct. 406, 408 (1956).  An indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incomplete evidence. *Id.,* 350 U.S. at 363, 76 S.Ct. at 408-09.

Although the information Roland complains was not presented to the grand jury was not exculpatory[6], the Supreme Court previously addressed the obligation of prosecutors to present exculpatory evidence to the grand jury.  In *Williams*, 504 U.S. 36, 112 S.Ct. 1735 (1992), the Supreme Court granted certiorari on the question whether an indictment may be dismissed because the government failed to present exculpatory evidence to the grand jury. The Williams court held there is no legal obligation on prosecutors to present exculpatory evidence to the grand jury. "[R]equiring the prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body." *Williams* at 51; *see Respulica v. Shaffer,* 1 U.S. (1 Dall.) 236, 1 L.Ed. 116 (O.T.Phila.1788) (the grand jury's function is not to try the defendant's defenses).

E.  Interstate Agreement on Detainers Act

Roland seeks dismissal claiming the United States violated the Interstate Agreement on Detainers Act (Agreement), when he was returned to California from the Eastern District of Texas without first being tried on the charges in the Eastern District.  § 2, 18 U.S.C. App. 2, Pub.L. 91-538. The Assistant U.S. Attorneys in the EDTX, as well as in the SDTX, each sought a court authorized writ of habeas corpus ad prosequendam to arrest and move Roland to U.S. Marshal's custody in the respective cases.

---

[6] Federal prosecutors do endeavor to present truly exculpatory evidence to grand juries.

The anti-shuttling provision of the Agreement is violated under two conditions—when a prisoner, who is serving a sentence in the sending state and indicted in the receiving state, is (1) transferred to the receiving state based on its lodging a detainer against him and requesting custody (Art.IV(a)), and then (2) returned to the original place of imprisonment before standing trial on the untried indictment. (Art. IV(e)). *United States v. Pursley*, 474 F.3d 757 (10th Cir.), *cert. denied*, 552 U.S. 829, 128 S.Ct. 47 (2007). There is no shuttling violation under the Agreement where there is no detainer lodged.

The government has been able to confirm that there was never a detainer lodged by the United States putting another jurisdiction on notice that Roland was wanted for trial in Texas. *See Affidavit of Special Agent Conner* (Exhibit G).   Since there was no detainer, the United States is not bound by the Agreement. *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834 (1978); *see also Martin v. Pittman*, 244 Fed.Appx. 597, 601 (5th Cir. 2007) unpublished. In *Mauro*, the Supreme Court reversed the Second Circuit who had affirmed a district court's dismissal of the indictment. The district court erroneously ruled that a writ of habeas corpus ad prosequendam is a detainer entitling the state inmate to the protection provided in the Agreement, specifically a trial before his return to a state prison. 436 U.S. at 345, 98 S.Ct. at 1840. The *Mauro* court reaffirmed the authority of district courts to grant writs to bring prisoners to court for trial and highlighted the differences between writs and detainers and why they are treated differently under the Agreement. 436 U.S. at 357, 98 S.Ct. at 1845-46.

1.  EDTX

On November 9, 2017, Roland made his initial appearance in the EDTX after being moved from an in-custody status in San Diego County, California to Sherman, Texas, on a writ of habeas corpus ad prosequendam. (EDTX 4:17-cr-177 Dkt.29).   After the detention hearing, the U.S.

Magistrate Judge in the EDTX ordered Roland detained pending trial.  (EDTX 4:17-cr-177 Dkt.35&36).

On November 9, 2017, Roland's trial was set for December 1, 2017. (EDTX 4:17-cr-177 Dkt.32). That order was amended several times. (EDTX 4:17-cr-177 Dkt.37,38,40).  The Superseding indictment was returned February 14, 2018. (EDTX 4:17-cr-177 Dkt.41). On April 13, 2018, an Agreed Motion to Declare the Case Complex was filed. (EDTX 4:17-cr-177 Dkt.49). The case was declared complex on April 19, 2018, and an order setting a trial date of September 17, 2018 was entered. (EDTX 4:17-cr-177 Dkt.52-54).

Roland's counsel filed an Assertion of Right to Speedy Trial on May 21, 2018.  (EDTX 4:17-cr-177 Dkt.62).  In the speedy trial request, the court was informed that "Counsel and Mr. Roland are in agreement with the current trial setting date but prays that it be a priority trial and not be reset any further." On May 29, 2018, Roland signed the Factual Basis. (Exhibit E).  The following day, Roland signed a written plea agreement. (Exhibit D).  On June 18, 2018, the court was notified that a plea agreement had been reached between Roland and the government. (EDTX 4:17-cr-177 Dkt.67). A change of plea hearing was scheduled before the Magistrate Judge for July 17, 2018.  On July 16, 2018, Roland through counsel asked for a plea hearing before the district court rather than the Magistrate. (EDTX 4:17-cr-177 Dkt.69).  On July 17, 2018, a change of plea hearing was re-scheduled before the district court for July 24, 2018.

The day before the scheduled plea, Roland moved for change of venue.  (EDTX 4:17-cr-177 Dkt.70).  The government had made Roland aware of venue issues in the EDTX at least by May 29, 2018. (Exhibit G). On August 7, 2018, the EDTX AUSA filed an unopposed Motion to Dismiss the indictment without prejudice.  (EDTX 4:17-cr-177 Dkt.71).  The Motion to Dismiss without prejudice was granted on August 8, 2018. (EDTX 4:17-cr-177 Dkt.72).  After the dismissal

16

of the EDTX indictment was ordered, Roland was returned to California to stand trial on the San Diego County indictment.

### 2. SDTX

After Roland's sentencing in the San Diego County, California, case in early 2019, a writ of habeas corpus ad prosequendam was request by the government in this case. (SDTX 4:18-cr-710 Dkt.4).

Roland had his initial appearance before the Magistrate Judge on April 29, 2019. (SDTX 4:18-cr-710 Dkt.9). At the time of his detention hearing in this case, Roland was serving an 11-year sentence in California at the Chuckawala State Prison. (SDTX 4:18-cr-710 Dkt.16&18; Exhibit A). Roland remained in the custody of the U.S. Marshal in the SDTX until he was released on bond in May 2021. (SDTX 4:18-cr-710 Dkt.65).

### F. Speedy Trial

Under the Speedy Trial Act ("Act"), the government must "commence" the trial against a defendant who has entered a plea of not guilty within "seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Accounting for the fact that some cases may require more time to prepare for trial, the Act excludes from the 70-day period all days lost to certain types of delay. *See Bloate v. United States*, 559 U.S. 196, 203 (2010); 18 U.S.C. § 3161(h). This statutory scheme ensures that the district courts may grant necessary pretrial motion preparation time without risking dismissal. *Bloate*, 559 U.S. at 214. The delays in this case are not due to the actions of the government.

1.   Delay Due to Defense Motions for Continuance

The Act specifically excludes from the 70-day period "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel, or at the request of the attorney for the Government, if his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7).  This provision furnishes much of the Act's flexibility because it "gives the district court discretion – within limits and subject to specific procedures—to accommodate limited delays for case-specific needs."  *Zedner v. United States*, 547 U.S. 489, 498-99, 126 S.Ct. 1976, 1984 (2006).  The Act requires the district court to make findings on the record explaining why it granted the continuance:

> No such period of delay resulting from a continuance granted by the court in accordance with the paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A).

The Supreme Court has held, however, that "the Act is clear that the findings must be made, *if only in the judge's mind*, before granting the continuance." *Zedner*, 547 U.S. at 506-07, 126 S.Ct. at 1989 (emphasis added).  The Court concluded that "at the very least the Act implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(20)."  *Id*.; *see also United States v. Dignam*, 716 F.3d 915, 921-22 (5th Cir. 2013); *United States v. Harris*, 566 F.3d 422, 431 (5th Cir. 2009).  "A judge's finding that a continuance would best serve the ends of justice is a factual determination subject to review under the clearly erroneous standard." *United States v. Eakes*, 783 F.2d 499, 503 (5th Cir. 1986).

### 2. Delay Due to Filing of Pretrial Motions

The Act also excludes (1) "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;" and (2) "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161(h)(1)(D), (H). Motions that require a hearing toll the clock from filing through the hearing, as well as for a 30-day post-hearing period during which the court may take the matter under advisement. *Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871 (1986).

"[D]elay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on . . . such motion" "implicitly extends to 'that time after a hearing needed to allow the trial court to assemble all papers reasonably necessary to dispose of the motion[.]'" *Harris,* 566 F.3d at 429 (quoting *United States v. Johnson*, 29 F.3d 940, 943 (5th Cir. 1994) (citing *Henderson*, 476 U.S. at 330-31, 106 S.Ct. at 1877)). At that point, the court has taken the motion under advisement and thus has thirty excludable days in which to rule, pursuant to § 3161(h)(1)(H). *Harris,* 566 F.3d at 429; *see also United States v. Stephens*, 489 F.3d 647, 656 (5th Cir. 2007).

During the pendency of this case Roland has moved numerous times to continue scheduling deadlines and trial dates. (SDTX 4:18-cr-710 Dkt.24,28,36). After Roland's third motion to continue the trial, the court, on October 21, 2019, set a trial date of April 1, 2020. (SDTX 4:18-cr-710 Dkt.37). Trial did not begin as scheduled because of Covid-19. Additional trial dates were canceled and rescheduled due to the pandemic. (SDTX 4:18-cr-710 Dkt.51,52&55). The most recent request by Roland to extend deadlines occurred on April 30, 2021. (SDTX 4:18-cr-710 Dkt.58). On May 10, 2021, during the hearing on Roland's Motion to Revoke Detention, the court

set a new trial date and motions deadlines and issued a written order to that effect. (SDTX 4:18-cr-710 Dkt.66&67).  A defendant is not prejudiced by the delay where he "requested, accepted and benefitted" from the delay. *United States v. Westbrook*, 119 F.3d 1176, 1188 (5th Cir. 1997).

This case has also been certified complex which further permits the Court to exclude time under the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(7)(B)(ii). (Dkt.35). As the Supreme Court noted, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 2192 (1972).

Roland's initial appearance in Houston was on April 29, 2019.  His trial was scheduled to begin June 24, 2019.  (Dkt.17).  A month prior to that trial setting, Roland began seeking extensions and continuances as described more fully below:

| DATE | EVENT | RECORD 4:18-cr-710 |
|------|-------|--------------------|
| 5/17/2019 | Roland's sealed filing with attachments | Dkt. 20 |
| 5/23/2019 | Roland's Motion for Extension of Time to file Motions and Responses | Dkt. 22 |
| 6/3/2019 | Sealed hearing | Dkt. 26 |
| 6/4/2019 | Order to Continue in the Interest of Justice; new trial date 8/12/2019 | Dkt. 27 |
| 7/22/2019 | Roland's Motion to Continue Trial for approximately 75 days | Dkt. 28 |
| 7/23/2019 | Sealed filing with attachments | Dkt. 29 |
| 7/24/2019 | Order to Continue in the Interest of Justice; new trial date 11/18/2019 | Dkt. 30 |
| 7/24/2019 | Sealed Order | Dkt. 31 |
| 8/1/2019 | Sealed Order | Dkt. 32 |
| 10/16/2019 | Roland's Motion to Certify Case Complex | Dkt. 35 |
| 10/16/2019 | Roland's Motion for Continuance until March 2, 2020 | Dkt. 36 |
| 10/21/2019 | Order to Continue in the Interest of Justice; new trial date 4/1/2020 and Order Certifying Case as Complex | Dkt. 37 |
| 2/26/2020 | Sealed filing with attachments | Dkt. 41 |
| 3/3/2020 | Motion for Pretrial Notice of 404(b) evidence | Dkt.43 |
| 3/3/2020 | Motion for Jencks Act Material | Dkt. 44 |
| 3/3/2020 | Motion to Produce Expert Testimony Summary | Dkt. 45 |
| 3/16/2020 | Joint Motion to Continue trial 60 days due to COVID-19 | Dkt. 46 |
| 3/17/2020 | Sealed hearing | Dkt. 47 |

| 3/18/2020 | Order to Continue in the Interest of Justice; new trial date 6/15/2020 | Dkt. 48 |
| 5/19/2020 | Joint Motion to Continue due to COVID-19 requesting September 2020 trial date | Dkt. 49 |
| 5/19/2020 | Order to Continue in the interest of justice; new trial date 9/29/2020 | Dkt. 50 |
| 8/10/2020 | Roland's Motion to Continue for 90 days | Dkt. 51 |
| 8/11/2020 | Order to Continue in the interest of justice; new trial date 1/11/2021 | Dkt. 52 |
| 11/25/2020 | Roland's Agreed Motion for Continuance due to COVID-19 for 120 days | Dkt. 54 |
| 12/7/2020 | Order granting joint motion for continuance in the interest of justice; new trial date June 1, 2021 | Dkt. 55 |
| 4/22/2021 | Sealed filing with attachments | Dkt. 56 |
| 4/27/2021 | Sealed hearing | Dkt. 61 |
| 4/30/2021 | Roland's Motion for Extension of Time to File Motions and Responses | Dkt. 58 |
| 5/3/2021 | Motion to Revoke Detention Order | Dkt. 59 |
| 5/6/2021 | Response in Opposition to Motion to Revoke Detention Order | Dkt. 62 |
| 5/10/2021 | Motion hearing granting Motion to Revoke Detention Order | Dkt. 66 |
| 5/11/2021 | Order to continue in the interest of justice; new trial date 9/27/2021 | Dkt. 67 |
| 6/8/2021 | Pro Se Omnibus Motion to Dismiss | Dkt. 70 |
| 6/8/2021 | Motion for Bill of Particulars | Dkt. 72 |

There have been several sealed filings which were not served on the government and sealed hearings which the government did not attend. These sealed events are included in the above list in the event the Court finds them relevant to the excludable delay analysis.

3. <u>Delays from the Pandemic</u>

During the COVID-19 pandemic, Roland sought and received three continuances. These motions documented the need to protect Roland's health during the pandemic, the fact that the case is complex, that many witnesses would have to travel from other states to testify, as well as the health risks to all who would be involved in the trial. In each instance the court granted the continuances after finding that the ends of justice served by the granting of such continuance outweighed the best interests of the public and the defendant in a speedy trial.

*a. Judicial measures taken in response to the COVID-19 pandemic*

As part of its pandemic response, the Houston Division of the Southern District of Texas suspended all jury trials between March 17, 2020 and May 10, 2021. On March 17, 2020, Special Order H-2020-6 for the Houston and Galveston Divisions of the Southern District of Texas was issued continuing all jury trials through May 1, 2020, due to the COVID-19 pandemic and the spread of the virus within the Houston and Galveston Divisions. "Due to the court's reduced ability to obtain an adequate spectrum of jurors and due to the reduced availability of attorneys and court staff to be present in courtrooms because of the public-health risks, the periods of the continuances implemented by this order are excluded under the Speedy Trial Act, 18 U.S.C. § 3161(H)(7)(A). The court finds that the ends of justice served by ordering these continuances outweigh the interest of public and of each defendant in a speedy trial. Indeed, the best interests of the public are served by these continuances." *See* Special Order H-2020-6 ¶ 2.

Supplemental Orders were issued continuing jury trials and excluding those periods under the Speedy Trial Act in which the court made findings that the ends of justice were served by ordering these continuances. *See* Special Orders H-2020-09; H-2020-13; H-2020-16; H-2020-18; H-2020-20; H-2020-22; H-2020-23; H-2020-24; H-2021-01; H-2021-3 and H-2021-11.

The Twelfth Supplemental Order was issued April 15, 2021, stating jury trials may resume May 10, 2021, using a phased approach to resuming jury trials recognizing the need to protect the health and safety of all participants to minimize the risk of COVID-19 exposure which gives priority to criminal matters. *See* Special Order H-2021-12.

From time to time the Bob Casey U.S. Courthouse in Houston had to be closed to the public and much of the staff to protect the health and safety of the public, staff, and judicial officers due to COVID-19. *See* Special Orders H-2020-08; 2020-10; 2020-11; 2020-12; 2020-14 and 2020-19.

Even under these emergency circumstances, the Southern District of Texas District Court endeavored to continue operations.  The court ensured matters relating to this case were addressed, including entertaining Roland's motions, holding hearings and issuing orders.

Prior to the pandemic, the Fifth Circuit had upheld ends-of-justice continuances due to emergencies. *United States v. Hale*, 685 F.3d 522, 533-36 (5th Cir. 2012) (medical emergency of the agent/witness was unforeseen and unavoidable was sufficient to satisfy the requirements of an ends-of-justice continuance under § 3161(h)(7)(A)); *United States v. Scott*, 245 F. App'x 391, 394 (5th Cir. 2007), unpublished (hurricane Katrina continuances were excludable delay)*.*  The record affirmatively reflects that any and all delays from the time of Roland's initial appearance to the present are all excludable delays under 18 U.S.C. § 3161(h).

### 4. Speedy Trial Assertion

Roland has neither timely or vigorously demanded a speedy trial in this case.  *Barker v. Wingo,* 407 U.S. 514, 531-32, 92 S.Ct. 2182, 2192-93 (1972).  He waited to file his motion to dismiss the indictment on speedy trial grounds, over two years after his initial appearance in Houston, and after filing seven motions to continue the trial date and other deadlines, two motions to extend his motions deadline, and a motion to certify this case as complex. "At the very least," a defendant "should manifest 'his desire to be tried promptly.'" *United States v. Frye,* 489 F.3d 201, 211–12 (quoting *United States v. Litton Sys., Inc.*, 722 F.2d 264, 271 (5th Cir. 1984)). If a defendant waits too long to assert his right, his "silence will be weighed against him." *United States v. Duran-Gomez*, 984 F.3d 366, 378 (5th Cir. 2020) (quoting *United States v. Parker*, 505 F.3d 323, 329–30 (5th Cir. 2007)).

Roland points to a notice he filed in the EDTX titled "Assertion of Right to Speedy Trial", as proof this court should have been on notice he wanted a trial within 70 days of his initial

appearance in Houston.  Of course, his repeated requests for continuances and extensions of time are inconsistent with such an assertion. "It can hardly be said that a defendant's many motions for continuance represent someone 'aggressively asserting his desire to be tried promptly.'" *Duran-Gomez*, 984 F.3d at 378 (quoting *Frye*, 489 F.3d at 212).

Even the May 21, 2018 notice that Roland filed through counsel was less of an assertion for an immediate trial and more of a request to proceed to trial on the scheduled date, September 17, 2018, which was almost four months in the future.  It stated, "Counsel and Mr. Roland are in agreement with the current trial setting date but prays that it be a priority trial and not be reset any further."  (EDTX 4:17-cr-177 Dkt.62).  Given Roland's repeated requests for continuances following the May 21, 2018 notice regarding his trial date, this document should be given little weight. *United States v. Young*, 657 F.3d 408, 417 (6th Cir. 2011) (the court should look at the defendant's surrounding conduct in making the assessment of whether he actually wanted to have a speedy trial).

There were no further resets in the EDTX after this notice was filed.  Prior to the filing of this notice there had been several resets of the trial date by agreement of the parties and the case was declared complex. (EDTX 4:17-cr-177 Dkt.37,40&52-54).   An unopposed motion to dismiss the indictment without prejudice was filed 42 days prior to the final trial setting. (EDTX 4:17-cr-177 Dkt.71).

The period of time between dismissal of the Sherman case and Roland's initial appearance on the Houston case is not applicable to a Sixth Amendment speedy trial claim. *United States v. MacDonald*, 456 U.S. 1, 2,102 S.Ct. 1497, 1498-99 (1982); s*ee also* 18 U.S.C. 3161(h)(5).

5. Prejudice

Prejudice may be presumed in cases which have experienced years of delay. *United States*

*v. Cardona,* 302 F.3d 494, 498 (5th Cir. 2002)  (delay longer than five years due to government negligence gave rise to the presumption of prejudice). The first three *Barker* factors, length of delay, reason for delay and defendant's assertion of speedy trial right, should be used to determine if prejudice is presumed or if it is the defendant's burden to show prejudice. *United States v. Bergfeld*, 280 F.3d 486, 490 (5th Cir. 2002). However, "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Doggett v. United States,* 505 U.S. 647, 656, 112, S.Ct. 2686, 2693 (1992). In addition, the government may rebut the presumption by proving the prejudice is "extenuated by the defendant's acquiescence." *United States v. Cardona*, 302 F.3d at 498.

The delays were not caused by government action but rather at the request of Roland. *United States v. Duran-Gomez*, 984 F.3d 366, 374 (5th Cir. 2020) (A defendant can contribute to delay by asking for continuances.) The Fifth Circuit has repeatedly pointed out, defendants who contribute to delays by asking for continuances and then later claim a speedy trial violation,  "will not be heard to complain of a lapse of time attributable to continuances he sought and received from the trial court." *Nelson v. Hargett*, 989 F.2d 847, 852 (5th Cir. 1993); *see also Robinson v. Whitley*, 2 F.3d 562, 569 (5th Cir. 1993) (weighing against a defendant his own motions for continuance).

Roland bears the burden of showing actual prejudice. *See United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003). "Actual prejudice is assessed in light of the three following interests of the defendant: (1) to prevent oppressive pre-trial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." *Harris*, 566 F.3d at 433 (5th Cir. 2009) (internal quotations omitted).  Prejudice can be presumed in certain circumstances.

### a. Pretrial Detention

Roland claims he has been subjected to oppressive pre-trial incarceration stating he has been detained a long distance from his family members whom he has been unable to visit regularly. Roland's claims of prejudice due to a pretrial order of detention should be viewed in the context of his status as a prisoner of the State of California. At the time Roland was moved from the California penitentiary to Houston, he was already serving an 11-year prison sentence.  Had a pretrial bond been set in this case, he would have remained in the custody of the U.S. Marshal's Service until California paroled or otherwise released him.  The same is true for the EDTX case. At the time he was brought to Sherman on a writ, he was in pretrial custody on the California charges. Even after he was returned to California from the EDTX he remained in custody on the California charges.

There is no question that while awaiting trial in Houston, the pandemic resulted in greater than normal restrictions at the Houston detention center. The restrictions at the Houston BOP detention center were designed to protect the detainees as well as the staff from acquiring and spreading COVID-19, and were modified as needed during the pandemic.[7]  These types of restrictions were enforced at prisons and detention centers across the nation.  While the measures did not keep all staff and defendants safe from exposure and sickness, the measures were necessary and worked to lower the spread of the virus within the facility. Had Roland been housed in the California penitentiary, similar measures would have been taken to restrict the inmates in order to lower the risk of spread of the virus.

### b. Anxiety and Concern

Roland claims he was prejudiced because in his opinion "the government and witnesses

---

[7] https://www.bop.gov/coronavirus/covid19_status.jsp

have mischaracterized his conduct."   Disagreement by defendants with the charges and the allegations regarding their intent are not unusual and hardly rise to the level of prejudice.  He also cites as contributing to his anxiety and concern the fact he was in custody during the pandemic. Like other inmates serving an imposed sentence, life in a facility during the pandemic was more difficult.

Roland's assertion of anxiety and concern due to delays in going to trial are undercut by not only his failure to object to a single motion for continuance but by his repeated requests for additional time, even during the pandemic.

### c. Impairment of Defense

Roland also asserts that because he was moved from location to location while in custody, he lost documents he thought important for his defense.  Roland has not specified that the "business records," "testimonials," and "addresses and phone numbers of support witnesses" were documents he only kept in his cell, or whether copies are otherwise available to him.   The government has made available to Roland all the records seized by California and Washington State during the search of his apartment and storage unit, as well as documents collected from those to whom he offered his services and collected a fee.  Further, written testimonials are likely not admissible evidence over hearsay objections and therefore no prejudice.

Roland has made no showing that he currently is unable to contact a witness because he no longer has an address or telephone number. He instead invites the court to speculate that it has become impossible to make contact rather than just a momentary inconvenience. This type of "speculative argument" is one the courts "are wary of in pre-trial, Sixth Amendment cases. *Duran-Gomez*, 984 F.3d at 380. There is no real evidence that delays in getting to trial have impaired Roland's ability to defend against the charges. *United States v. Valenzuela–Bernal,* 458 U.S. 858,

869, 102 S.Ct. 3440, 3447 (1982).   To the contrary, he has benefited from his repeated requests for continuances and extensions of time to file motions.

    G.   Fifth Amendment

To the extent Roland's pro se motion also alleges a Fifth Amendment violation, he has not met his burden to establish a due process violation or prejudice.  Under the Fifth Amendment, a defendant must demonstrate actual prejudice since none is presumed. *United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2084 (1977).

Roland attributes bad motives on the part of the government regarding the timing of the Houston prosecution after the resolution of the San Diego case. In November or December 2018, as Roland points out, he was given an opportunity prior to the start of his trial in California, and prior to the Houston grand jury returning an indictment, to enter into plea negotiations with both the San Diego District Attorney's Office and the United States Attorney's Office in the Southern District of Texas to resolve the pending indictment in San Diego and the prospective charges in Houston. (Dkt.70 pp.38&40).  As is his right, he chose not to engage in negotiations and to proceed to trial.  The government did not gain a tactical advantage in returning an indictment after his San Diego trial had begun but before he had been convicted.

Once Roland chose to proceed to trial in San Diego, it would have been inappropriate, as well as unfair to Roland, to physically remove him from that jurisdiction prior to the completion of the San Diego prosecution, including sentencing.  The day of the return of the superseding indictment in Houston, a motion for a writ of habeas corpus ad prosequendam was filed by the government requesting an order to have Roland brought to Houston to stand trial. (Dkt.4&5)  Once Roland was arraigned on these charges, he still could have availed himself of the opportunity to

negotiate a plea agreement to have the federal and California sentences run concurrently but instead made the decision to proceed in the manner he has.

Further, Roland claims extreme prejudice by the subsequent indictment in Houston after his San Diego state court trial had begun because evidence of his California conviction may be offered in the Houston trial.  Of course, the reverse of that argument would be made by Roland in California had the Houston case been tried first.  Regardless, the timing of Roland's Houston indictment, it was not based on the San Diego outcome or the prospect of a guilty verdict. Rather, the timing was a result of the ongoing investigation of Roland and others, and the availability of the prosecutor.

## IV.    Conclusion

The Court's jurisdiction arises from the criminal charges alleged in the indictment. Roland's claimed defense does not trigger jurisdiction in some other court or administrative body. There have been no constitutional violations of Roland's rights. There is no evidence of selective prosecution or a prosecution motivated by vindictiveness.  There have been no Fifth or Sixth Amendment speedy trial violations pre or post indictment and no violation of the Speedy Trial Act.  There is no actual prejudice to Roland as a result of any delay.  Roland's assertions of defects in the indictment are nothing more than a factual dispute which are not ripe for dismissal of an indictment.  Similarly, there were no violations in the grand jury proceedings that led to the pending indictment which should lead to a dismissal of the indictment. There is no violation of the Interstate Agreement on Detainers Act since no detainers were issued to California to hold Roland for transport to Texas. Writs of habeas corpus ad prosequendam are not detainers. For all the

reasons discussed in this response, Roland's Omnibus Motion to Dismiss should be denied.

Respectfully submitted,

JENNIFER B. LOWERY
ACTING UNITED STATES ATTORNEY

By: _____/s/Melissa J. Annis_____
Melissa J. Annis
Assistant United States Attorney
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9000

_____/s/John J. Wakefield, III_____
John Wakefield, Assistant U.S. Attorney

_____/s/John Braddock_____
John Braddock, Assistant U.S. Attorney

Certificate of Service

I hereby certify that a copy of the United States' Response in Opposition to Omnibus Motion to Dismiss was served on David A. Nachtigall and David Adler, counsel for the Defendant Clarence Roland, III, via ECF on June 22, 2021.

/s/ Melissa J. Annis_____
Melissa J. Annis
Assistant United States Attorney